UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-516-H

MELISSA R. QUIGGINS                                                                PLAINTIFF

v.

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT;
MARK E. BOLTON;
CORIZON, INC.; and
UNKNOWN DEFENDANTS                                                     DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Melissa Quiggins, has brought state claims of medical negligence and federal constitutional claims for deliberate indifference against individuals and corporations associated with the Louisville/Jefferson Country Metro Government concerning the health and dental care provided to her while incarcerated. Previously, this court entered a voluntary dismissal of all federal claims against Louisville/Jefferson County Metro Government, Mark Bolton, and Unknown Defendants. What remains of Plaintiff's complaint is a claim for medical negligence and a § 1983 deliberate indifference claim against Corizon, Inc. ("Corizon"), previously known as Correctional Medical Services, Inc. Defendant now moves for partial summary judgment in favor of Corizon on the deliberate indifference claim.

Corizon is a service corporation under contract with the Louisville/Jefferson County Metro Government Department of Corrections ("LMDC") to operate the health and dental care programs at the LMDC facility where Plaintiff was incarcerated. Plaintiff alleges that Defendant violated the Eighth Amendment by acting with deliberate indifference towards her medical condition, amounting

to a violation of her constitutional right to protection against cruel and unusual punishment.

Defendant makes two arguments to counter this assertion: (1) Plaintiff is unable to establish that Defendant's employees were in fact deliberately indifferent to the medical needs of Plaintiff; and (2) Plaintiff cannot show that Defendant's employees acted pursuant to an unconstitutional policy, practice or custom, an element that must be proved to sustain a § 1983 action against a municipality or an agent thereof.  For the reasons that follow, this Court concludes that the actions of Corizon and its employees did not amount to deliberate indifference under Eighth Amendment jurisprudence.

## I.

Plaintiff and Defendant offer varied perspectives on the precise details of this case.  The following are the facts and sequence of events material to the deliberate indifference claim.  On October 1, 2008, Plaintiff was arrested on bench warrants for flagrant non-support and possession of controlled substances and paraphernalia.  She was sentenced to serve 365 days in jail.  Plaintiff was booked at the LMDC jail, a short-term incarceration facility, where she remained until her release on August 20, 2009.

Plaintiff suffered from various upper respiratory problems and mental health issues during her stay at the corrections facility, but her principal medical concern stemmed from pain in her tooth. With regards to the respiratory problems, Plaintiff requested health services three times during the month of November before she was referred to a physician. Prior to the physician appointment, nurses at the jail provided Plaintiff with "cold packs" to alleviate her discomfort.  A physician never attended to her for this problem.  One of Plaintiff's experts, Dr. Stephen Barclay, speculated that

these sinus issues were a sign of dental infection; though without examination by a physician at the time, Dr. Barclay provides no opinion within a reasonable degree of medical probability.

On January 16, 2009, a jail dentist responded to Plaintiff's complaint of a toothache by prescribing penicillin and Ibuprofen, although it is unclear from the record whether the dentist actually saw Plaintiff or ordered this prescription via telephone. When Dr. Schmutz, a jail dentist, saw Plaintiff one week later, he recorded tooth decay and administered pain medication.  On March 18, 2009, Plaintiff reported to medical staff that she was experiencing common cold or sinus infection symptoms, for which she was treated with a "cold pack."

On March 30, Plaintiff again complained of a toothache to a dental nurse.  At this time, or during another examination by a dental nurse on April 3, Plaintiff explained that she did not want her tooth extracted and it was her intent to see a dentist upon her release. Dr. Marilyn Brown, a dentist employed by Defendant and who examined Plaintiff in July, stated that under the Correctional Medical Services Policy and Procedures Manual, the only options available for a patient like Plaintiff were to extract the maligned tooth or treat the patient with antibiotics and pain relief medication. While a root canal or other procedure may be more advantageous, the options at a temporary corrections facility like the one in the instant case are limited.  Additionally, Dr. Brown testified that a sedative filling was not an appropriate treatment given the condition of Plaintiff's tooth.  Plaintiff told the dental staff at the jail that she wanted to preserve the tooth, effectively rejecting the extraction procedure.  As a result, the nurse provided Plaintiff with medications to mitigate her pain.

Several months later, on June 5, 2009, Plaintiff again requested treatment for cold-like symptoms, and on or around June 10, health services personnel prescribed Plaintiff cold medication.

3

Two weeks later on June 23, Plaintiff saw a dental health nurse again concerning her toothache, but told the nurse that she would be released in a number of days and only needed medication to hold her over until she could see a dentist outside the jail.  Plaintiff was not released within a few days.

Later that month, as the pain persisted, Plaintiff asked to see a dentist.  The dental nurse continued to provide Ibuprofen to relieve Plaintiff's pain.  Dr. Brown examined her on July 1, 2009, and found irregularities in the pulp of three teeth.  She provided palliative treatment, prescribing an antibiotic and pain medication.  One week later, Plaintiff saw Dr. Brown again, and reiterated her desire to keep her tooth and defer treatment until her release.  On July 15, Plaintiff signed a Release of Responsibility form, indicating that she refused to accept dental treatment and recommendations, and acknowledging that she has been fully informed of the treatments, recommendations, and risks involved in refusing this treatment.

On August 16, 2009, the on-call provider responded to Plaintiff's complaints of pain by prescribing an antibiotic and Motrin and placing her on the dental call list.  The nurse noted on the health forms that Plaintiff's face was swollen and Plaintiff was tearful and anxious.  Two days later, Dr. Herbert Labordeaux, another jail dentist, evaluated Plaintiff and found an acute abscess tooth.  He administered pain medication and ordered Plaintiff to continue the antibiotic course previously prescribed by the on-call doctor until release.  Plaintiff was released two days later, on August 20, 2009.  Plaintiff argues that Dr. Labordeaux should have prescribed the treatment for three days after her release, as per LMDC and Corizon policies.  It is disputed, however, whether Plaintiff's particular situation even triggered these policies, and whether the LMDC facility indeed failed to offer such medication to the Plaintiff.

On August 21, 2009, Plaintiff visited her family physician, Dr. Katherine Witherington.  Dr.

4

Witherington  noted that Plaintiff said she saw her dentist earlier that day, and her dentist scheduled a root canal.  The following day, Plaintiff was transported to the Baptist East Emergency Room due to fever and pronounced facial swelling.  Amputation of both her legs and all ten fingers resulted.

Plaintiff attributes these injuries to an untreated tooth abscess that spontaneously drained bacteria-laden pus which aspirated into Plaintiff's lung.  According to Plaintiff, this bacteria then either caused her to contract pneumonia complicated by sepsis or poisoned her bloodstream, leading to the amputation of Plaintiff's limbs.  Defendant presents medical evidence that the infection leading to the amputation has an entirely independent origin.

Plaintiff's and Defendant's disparate recitation of the facts and the varied expert opinions show that serious issues persist as to the causal connection between the toothache and the amputation of Plaintiff's feet and fingers.  However, Defendant does not seek summary judgment on that basis.  It focuses on the deliberate indifference issue, not causation.  In this analysis, the Court must view the evidence of deliberate indifference and draw all reasonable inferences in favor of the Plaintiff.  *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  Taking the Plaintiff's allegations as true, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Based on this standard, the Court proceeds to address the substantive issues in the motion for partial summary judgment.

II.

Plaintiff alleges that Defendant was deliberately indifferent to her serious medical needs by failing to provide proper medical treatment.  This claim arises under 42 U.S.C. § 1983, "which

5

creates a civil cause of action against individuals who, while acting under the color of state law, deprive a person of the 'rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012)(quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)).  Plaintiff's claim under § 1983 is based on alleged violations of the Eighth Amendment, which forbids prison officials from acting with deliberate indifference toward an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To maintain this § 1983 action, an inmate who claims a violation for denial of medical care must satisfy both an objective component and a subjective component of deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A.

The objective component requires the existence of a "sufficiently serious" medical need. *Id.*  "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)(quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)).

Defendant would argue that no one could have known about the seriousness of Plaintiff's condition and that, indeed, it was unrelated to her dental complaints. Taking Plaintiff's allegations as true, however, her condition meets the objective component of her claim.  Dental problems have been recognized as a serious medical need when the condition results in significant pain and discomfort.  *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (recognizing a serious need where the dental problem results in pain to the plaintiff, tooth deterioration due to lack of treatment, or "the inability to engage in normal activities").

6

According to Plaintiff, over the course of her eleven-month incarceration, she experienced significant pain resulting from her toothache and abscessed tooth.  In making this assertion, Plaintiff has presented sufficient evidence to meet the objective element of deliberate indifference.

B.

The remaining issue is whether Plaintiff presented enough evidence to establish the subjective component of the deliberate indifference claim.  This is a difficult test to meet, particularly considering the amount of attention devoted to Plaintiff's care over an extended time.  The subjective component of a § 1983 claim requires Plaintiff to establish that prison officials had a sufficiently culpable state of mind by acting with deliberate indifference to a serious medical need.  *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004).  The Supreme Court defined deliberate indifference as being more than acting negligently but less than acting with purpose or knowledge.  *See Farmer*, 511 U.S. at 836; *Estelle*, 429 U.S. at 106.  For liability to attach, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health; (2) drew the inference that a substantial risk of harm to the inmate existed;  and (3) consciously disregarded that risk.  *Farmer*, 511 U.S. at 837.

In the medical context, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)(quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). However, prison officials cannot avoid § 1983 liability by providing some minimal measure of treatment.  Indeed, the Sixth Circuit recognizes that

7

deliberate indifference can be found in cases where the defendant rendered "'grossly inadequate care' or made a 'decision to take an easier but less efficacious course of treatment.'" *McCarthy v. Maitland Place, D.D.S.*, 313 F. App'x 810, 814 (6th Cir. 2008)(quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)); *see Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (defining grossly inadequate medical care as medical treatment "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness").

Plaintiff argues Defendant is liable because the inadequate medical treatment provided in the LMDC facility effectively was no treatment at all. She states that Defendant's employees allowed her grossly undertreated tooth abscess to advance to such a point that it spontaneously drained bacteria into her lung resulting in the amputation of both her legs and her fingers. However, during the nearly eleven-month period of Plaintiff's incarceration, at least three different licensed dentists saw her on four different occasions. Additionally, she met with numerous other medical personnel, including physicians and dental nurses. She received a variety of treatments for her ailments, including the administration of pain medications and antibiotics.

Most notably, she refused a procedure that would have greatly improved her medical situation and which might have prevented subsequent problems. When her tooth infection advanced to such a state where extraction was warranted, the Defendant's licensed dentist offered to perform the procedure. At that point, Plaintiff had two options: to continue taking pain medication or to have her tooth extracted.[1] Plaintiff then voluntarily decided to forgo the dental care offered to her and

---

[1]Plaintiff cites *McCarthy v. Maitland Place, D.D.S.*, to buttress her argument that dental personnel rendered inefficacious treatment. 313 F. App'x 810 (6th Cir. 2008). In that case, the Sixth Circuit found an issue of fact with regard to deliberate indifference in a case involving alleged inadequate dental care. *Id.* at 814. However, a closer look at this case reveals that its facts differ materially from those here. In *McCarthy,* the dentist may have withheld

8

indicated she would see an outside dentist when released.  The course of treatment offered was adequate and the choice was in Plaintiff's control.  She chose to defer the procedure until release.

Throughout this ordeal, Plaintiff actively received ongoing dental and general health care. Defendant's medical personnel attended to Plaintiff's medical needs and made efforts to increase her comfort. When Plaintiff deferred treatment for her tooth abscess, Defendant's staff continued to administer pain medication and antibiotics until her release.  Such medical care is not "so cursory as to amount to no treatment at all." *Terrance*, 286 F.3d 834, 843-44 (6th Cir. 2002) (quoting *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989)).  Plaintiff's additional arguments that Defendant performed improper intake dental screenings and failed to meet the suggested standard of providing 25 hours of dentistry a week have no bearing on the deliberate indifferent analysis in these circumstances.

A thorough review of the record reveals that the Defendant's employees may have been, at most, negligent in treating Plaintiff.  However, neither negligent medical care nor the delay in providing medical care can rise to the level of a constitutional violation absent specific allegations of sufficiently harmful acts or omissions establishing deliberate indifference.  Looking at the record in the light most favorable to Plaintiff, and giving her the benefit of all favorable inferences, a reasonable jury could not conclude that Defendant's medical personnel were deliberately indifferent to Plaintiff's medical needs.[2]

---

a more effective treatment option despite performing that procedure on other inmates.  In essence, the dentist did not offer a procedure out of his own convenience rather than medical need. *Id.*  Here, Dr. Brown stated she offered those treatments that were available to a patient in plaintiff's condition and in that facility.  Plaintiff, on her own accord, refused a procedure that would have potentially alleviated her dental pain.  Because the facts here are materially different, *McCarthy* is not controlling.

[2]The remaining issue in analyzing § 1983 municipal authority liability would be whether there is a direct causal link between a municipal policy or custom and the constitutional deprivation.  A private corporation under contract to provide medical care to inmates at a state prison is acting under the color of state law and is therefore

For the reasons stated herein, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment is SUSTAINED and Plaintiff's § 1983 deliberate indifference claim is DISMISSED WITH PREJUDICE.

The Court will consider other pending motions in due course.  The remaining claim is set for a jury trial commencing **October 29, 2012.**

cc:      Counsel of Record

---

subject to suit under § 1983.  *West v. Atkins*, 487 U.S. 42, 56 (1988).  When a § 1983 claim is made against such an entity, a court must also determine that the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  The Court need not address this issue because Plaintiff cannot satisfy the first element of this § 1983 claim.